WILLIAM A. MARTIN II, Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Impact Industries, Inc., Appellants).

Second District (Industrial Commission Division)   No. 2—91—0822WC

Opinion filed April 16, 1992.

Mark C. Wiedner, of Wiedner & McAuliffe, Ltd., of Chicago, for appellant.

James L. Donohue, of James L. Donohue, Ltd., of Rockford, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employee, William A. Martin II (claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.1 *et seq.*), alleging that he sustained injuries on July 20, 1985, as a result of his employment with Impact Industries, Inc. (employer). The arbitrator denied compensation, based on the finding that claimant failed to prove that his injuries were work related. The Industrial Commission (Commission) affirmed the arbitrator's decision denying compensation, and the claimant appealed. On administrative review, the circuit court set aside the decision of the Commission, and the employer appealed, raising the issue of whether the trial court erred in reversing the de-

cision of the Commission and substituting its own factual finding for that of the Commission. We reverse.

The claimant began working for the employer as a sales manager on March 4, 1985. Approximately three months later, he was informed by his superiors that his sales were inadequate, and he was told to try to become more productive. On July 19, 1985, the claimant went to the hospital emergency room complaining of chest pain of several hours duration. He also told the staff on admission that he had been having chest pain for three weeks which required the use of nitroglycerin. The claimant remained in the hospital for several hours but then signed out against medical advice. That day he reported to work for a scheduled sales meetng but then informed his superiors that he did not feel strong enough to attend the meeting. The sales meeting was rescheduled for the following day, which was a Saturday. However, the claimant stated that he felt ill while he was driving to work so he contacted the employer and informed his superiors that he was unable to attend the meeting. Shortly thereafter the employer contacted the claimant and informed him that he was fired due to his poor sales performance. At this time the claimant was asked to return the company car. According to the claimant's testimony, the employer refused claimant's request to keep the car until Monday and threatened to notify the police if the car was not returned that day. Although the claimant reported having severe chest pain while he was returning the car to the employer, he did not seek medical attention that day. He remained at home for the remainder of the weekend. However, two days after his termination from the employer, claimant was admitted to the hospital when his chest pain became more severe. At that time he was diagnosed as having had a myocardial infarction (heart attack).

The factors reviewed by both the Commission and the circuit court were the claimant's history of chest pain and coronary vessel disease dating back to 1982 as well as his participation in certain behaviors, contrary to medical advice, such as smoking, drinking and failure to follow dietary recommendations. An additional factor considered was the amount of personal stress claimant was having due to his marital problems and the fact that a woman with whom he was having an affair had become pregnant. The medical evidence reviewed consisted of the records of claimant's treating physicians, Drs. Michael Bortoli and Gerald Peterson, and the evidence depositions of Dr. Peterson and the employer's medical expert, Dr. William Brice Buckingham.

The employer contends that the trial court erred in reversing the decision of the Commission because there was sufficient evidence in the record to support the Commission's determination that the claimant's injuries on July 20, 1985, were not work related. It is the function of the Commission to make a determination regarding questions of fact, witnesses' credibility as well as the weight of their testimony, and its judgment will not be disturbed unless it is found to be erroneous. (*Martin v. Industrial Comm'n* (1982), 91 Ill. 2d 288, 293-94, 437 N.E.2d 650.) This determination also includes the question of whether a causal relationship exists between the claimant's employment and his injuries. A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence. *Jones v. Industrial Comm'n* (1983), 93 Ill. 2d 524, 526, 445 N.E.2d 309; *Health & Hospitals Governing Comm'n of Cook County Hospital v. Industrial Comm'n* (1975), 62 Ill. 2d 28, 32, 338 N.E.2d 402.

The claimant had cardiac symptoms several years prior to the events at issue. In July 1982, he was treated with a coronary angioplasty for recurring chest pain. The claimant's cardiologist, Dr. Peterson, informed him that he had a single vessel disease and that he was at risk of having a heart attack. He was also instructed to stop smoking and was given certain dietary restrictions. The claimant again sought medical treatment for chest pain on several occasions in 1984. When he saw Dr. Peterson on one of these occasions, his blood pressure and cholesterol level were elevated. The claimant acknowledged that he had not stopped smoking and he was consuming two cases of beer a week. Several diagnostic procedures were also performed which revealed the presence of progressive disease of the cardiac vessels. Dr. Peterson told the claimant that his risk of having a heart attack had increased and that it would continue to rise if he did not follow the medical guidelines he had been given regarding his smoking and diet. Despite this warning, the claimant continued to ignore these guidelines, and at the time of the injury at issue the claimant was still smoking, consuming large quantities of beer and otherwise not following medical advice. On July 19, 1985, the day before the claimed injury, the claimant went to the hospital emergency room complaining of chest pain but signed out of the hospital several hours later against medical advice.

In addition to the claimant's preexisting cardiac condition, there were also certain personal problems which he acknowledged caused

him a great amount of concern and which may have affected his medical condition. At the time of the injury at issue, the claimant was having marital problems as well as an extramarital affair, and the woman with whom he was involved was pregnant. He was also informed by his superiors that his work performance was poor and that it had to improve.

The Commission also reviewed the depositions of Dr. Peterson and Dr. Buckingham. Dr. Peterson testified that the incident in which the claimant was told that he was fired and had to return the company car while having chest pains superimposed on his preexisting cardiac condition could have precipitated claimant's heart attack. However, Dr. Buckingham testified that it was claimant's "relentlessly progressive, occlusive arteriosclerotic disease of the coronary vascular system" as well as the claimant's smoking, elevated cholesterol level, and family history rather than the news that he was fired and had to return the company car that caused the heart attack. It was the function of the Commission in this case to resolve this conflicting medical testimony. *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221.

■■■ The claimant's position is that the heart attack that he sustained on July 22, 1985, was causally related to the fact that he was suddenly terminated from his job and that his boss insisted that he return the company car and threatened to notify the police if it was not returned that day. We first note that although claimant characterizes his termination as sudden, his supervisors had recently informed him that his work performance was unsatisfactory and that it had to improve. Furthermore, the stress resulting from fear of losing a job or actual termination is a "normal and expected condition[ ] of employment life, along with the accompanying insecurity and worry." (*Esco Corp. v. Industrial Comm'n* (1988), 169 Ill. App. 3d 376, 384, 523 N.E.2d 589.) Therefore, claimant's allegation that there was a causal relationship between his termination and subsequent heart attack is without merit. As to his remaining allegation that his heart attack was also caused by his boss' demand that he return the company car or be reported to the police, we conclude that there was sufficient evidence to support the Commission's decision that there was no causal relationship between this incident and the heart attack two days later. In addition to claimant's medical history, failure to follow medical guidelines, and the medical testimony, the Commission also considered the fact that, despite claimant's reported chest pain on the day of the incident at issue, he did not seek any medical attention until two days later. Although the circuit court drew a different inference from the

evidence, the findings of the Commission were not against the manifest weight of the evidence. Therefore it was error for the circuit court to substitute its judgment for that of the Commission.

Accordingly, the order of the circuit court setting aside the decision of the Industrial Commission is reversed.

Reversed.

McCULLOUGH, P.J., and WOODWARD, STOUDER, and LEWIS, JJ., concur.