(No. 51492

FORD MOTOR COMPANY, Appellee, v. THE INDUS-TRIAL COMMISSION *et al.* (D. D. Kennedy, Appellant).

*Opinion filed January 23, 1980.*

Baskin & Baskin, of Chicago (Richard W. Baum, of counsel), for appellant.

William P. Landon, of Chicago for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Claimant, D. D. Kennedy, filed for workmen's compensation benefits after he sustained injuries as a result of a physical encounter with a coemployee. An arbitrator found that the claimant had failed to prove that such injuries arose out of and in the course of claimant's employment. The Industrial Commission set aside the decision of the arbitrator and held that Ford Motor Company, the employer, owed claimant for 24 weeks total disability at $108 per week, 60 weeks at $86.10 for a statutory skull fracture (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(d)), and $545 for medical expenses. The circuit court of Cook County found the Commission's decision to be in error as a matter of law and reinstated the decision of the arbitrator.

Claimant asserts that the Commission's finding, which was based on uncontroverted facts, was not against the manifest weight of the evidence, and that his injuries arose out of and in the course of his employment.

In early August of 1973, claimant and Wayne Simmons worked together briefly to weld a guard on a conveyor. The claimant, a sheet-metal man, performed the sheet-metal work, and Simmons, a welder, performed the welding. The next day, the foreman called claimant to his office and asked who had done the welding job. Claimant replied that it was Simmons. A day or two later, Simmons confronted Kennedy and accused him of "turning him in on the welding job." After this incident, Simmons would regularly go to claimant's work area, make critical remarks concerning claimant's work and call him an unskilled worker.

On August 22, 1973, shortly after a lunch break, Simmons came to an area in which claimant was working and said to the claimant, "You will have to grind that," referring to the gate on which claimant was working. Claimant told Simmons that he knew his job and asked him to leave him alone. Simmons then rushed up to the claimant. The claimant gave him a shove back and turned away. Simmons went after him, and a scuffle ensued. Claimant was hospitalized and underwent surgery to insert a plate in his skull. He returned to work on February 1, 1974, and was on light duty for six months. He now complains of frequent headaches, neck soreness and blurred vision in the left eye.

Clearly, the instant dispute arose out of and in the course of the claimant's employment. The conversation which prompted the August 22 confrontation concerned the quality of claimant's work and was the culmination of a series of acts by Simmons which followed his having been reported to the foreman.

There remains, however, the question of who was the aggressor. Generally, when an injury results from physical combat between two employees over the employer's work, the employee who was not responsible for the aggression may be compensated. (*Fischer v. Industrial Com.* (1951), 408 Ill. 115, 119; *Franklin Coal & Coke Co. v. Industrial Com.* (1926), 322 Ill. 23, 27; *Pekin Cooperage Co. v. In-*

*dustrial Com.* (1918), 285 Ill. 31, 35.) Injuries sustained by the aggressor, being traceable to his own voluntary acts, are not within the scope of employment and are not compensable. *Armour & Co. v. Industrial Com.* (1947), 397 Ill. 433, 436; *Triangle Auto Painting & Trimming Co. v. Industrial Com.* (1931), 346 Ill. 609, 618; *Fischer v. Industrial Com.* (1951), 408 Ill. 115, 119.

In *Container Corp. of America v. Industrial Com.* (1948), 401 Ill. 129, a new employee, Jim Lee Petty, accidentally dropped a roll of paper from the top of a machine and it fell on Willie Silas, a fellow employee. A half hour later, Silas approached Petty and said, in an abusive tone, that he was going to cut his throat. Petty responded by striking Silas, who fell to the ground. He got up, again confronted Petty, was struck a second time, and fell. In the second fall, he sustained an injury to his head which caused his death. In a claim filed by Silas' widow, the court refused to accept the argument that Petty was the aggressor because he struck the first blow. Instead, the court ruled that Silas was the aggressor in that "[h]is words were antagonistic, and were such as might cause an altercation, whether justified or not. By such action, he stepped outside of the scope of his employment, and by so doing he stepped outside the protection of the Workmen's Compensation Act." *Container Corp. of America v. Industrial Com.* (1948), 401 Ill. 129, 133.

We find, as did the court in *Container Corp.,* that the fact that one employee made the first physical contact is not decisive in determining which party is the aggressor. The totality of the circumstances must be examined to determine whose behavior amounted to aggression. Here, Simmons taunted and antagonized the claimant, daily, in an apparent attempt to retaliate for claimant having earlier identified Simmons' inferior workmanship to the foreman. Simmons' course of conduct was a series of acts of aggression which led to the August 22 incident. When, at that time, Simmons criticized and rushed up to claimant, the latter's reflex reaction to the aggressive behavior was to

push Simmons away. Since the facts support the claimant's contention that he was not the aggressor, he may be compensated for the injuries he sustained.

The finding of the Industrial Commission will not be set aside unless contrary to the manifest weight of the evidence. (*Swift & Co. v. Industrial Com.* (1919), 287 Ill. 564, 573; *Fischer v. Industrial Com.* (1951), 408 Ill. 115, 120.) We hold that there was sufficient evidence on which the Commission could base an award for the claimant. We therefore reverse the finding of the circuit court and reinstate the award of the Commission.

*Judgment reversed;*
*award reinstated.*