THE VILLAGE OF WINNETKA, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (William Fisher, Appellee).

First District (Industrial Commission Division)   No. 1—92—4423WC

Opinion filed July 30, 1993.

Jack M. Shanahan, of Johnson, Drozdzik, Van Driska & Andros, Ltd., of Chicago, for appellant.

Richard J. Barr, Jr., of Lannon, Lannon & Barr, Ltd., of Chicago, for appellee.

JUSTICE SLATER delivered the opinion of the court:

Claimant, William Fisher, brought a workers' compensation claim against his employer, the Village of Winnetka, for injuries sustained on April 21, 1989. The arbitrator granted the claimant's petition finding that his injuries occurred within the course of his employment. On review, the Industrial Commission (Commission) affirmed the award and the circuit court confirmed the decision of the Commission. The employer appeals. We affirm.

The claimant had worked for the village as a trash collector for approximately four years prior to the incident giving rise to this claim. During that time, his regular partner was George Schladt. Employees were scheduled to arrive at work at 7 a.m., although the village allowed its trucks to leave on their routes as early as 6:30 a.m. When the route was completed, the employees were allowed to leave early. Even though the claimant's route could be completed within four to six hours, the village paid for a full eight hours. The claimant and Schladt both had second jobs as limousine drivers with Lois Limo.

On April 21, 1989, the claimant came to work at 6:45 a.m. Originally he was not scheduled to go on a trash collecting route because he had been sick. However, he had been rescheduled to go on the route with Schladt. When the claimant saw Schladt, Schladt started yelling at him and calling him names. Schladt told the

claimant that he should have been there at 6:30 a.m. because Schladt wanted to finish the route so he could go home early. As they started their route, Schladt continued to call him names. After picking up the garbage at one stop, Schladt came up behind the claimant, kicked him, and called him a "son of a bitch." Schladt then punched him four times in the face, put him in a headlock, and asked, "Do you want to fight?" After he was released, claimant began walking back to the yard and was picked up by another truck. He testified that his face hurt and blood was coming from his nose.

The claimant told his supervisor, Bill Willins, about the fight. Willins then brought Schladt and Fisher into his office. Schladt told Willins that Fisher had "screwed me up" because he was not at work by 6:30 a.m. and Schladt needed to get to his second job.

The claimant described Schladt as grumpy and always mad at people. On one prior occasion, Schladt had thrown and hit Fisher with a tennis ball because he did not drive the truck in the right spot.

After the attack, claimant saw Dr. Stephen Yeh, who noted that Fisher had a blocked nasal passage and a nasal fracture coupled by troubled breathing. Dr. Yeh performed surgery, and a second surgery was performed by Dr. David Randolph.

At the time of the attack, the claimant's average weekly wage with the employer was $540.90. He was also working a second job as a limousine driver for Lois Limo from which he made a total of $1,662.64 in nine weeks.

The arbitrator awarded the claimant $4^6/7$ weeks of temporary total disability at a rate based on an average weekly wage of $725.64. The average weekly wage was determined by adding the claimant's average weekly wage with the employer to the average weekly wage from Lois Limo.

On appeal, the village argues that the circuit court erred in finding the claimant's injuries arose out of the course of his employment. It initially argues that the standard for review on this issue is not whether the Commission's decision is against the manifest weight of the evidence, but whether the decision was correct as a matter of law.

While the facts in the instant case may be undisputed, where they present more than one reasonable inference, the determination of the issue presents a question of fact and the decision of the Commission will not be disturbed on review unless it is contrary to the manifest weight of the evidence. (*R.A. Cullinan & Sons v. Industrial Comm'n* (1991), 216 Ill. App. 3d 1048, 575 N.E.2d 1240.) A

court will not disregard permissible inferences drawn by the Commission merely because other inferences might be drawn from the same evidence. *Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 509 N.E.2d 1005.

In the case *sub judice*, the Commission could have reasonably inferred that the employer's last-minute reassignment of the claimant on the day of the assault contributed to his injuries. Moreover, the Commission could infer that Schladt had an ongoing behavioral problem which created an added risk to the claimant.

■ Injuries caused by an assault by a co-worker at the work place during work hours are compensable if the assault arose in the course of a dispute involving the conduct of the work, provided the claimant is not the aggressor. (*Rodriguez v. Industrial Comm'n* (1982), 95 Ill. 2d 166, 447 N.E.2d 186.) However, injuries suffered by an employee as a consequence of an assault are not compensable if the motive was personal to the victim rather than work related. *Schultheis v. Industrial Comm'n* (1983), 96 Ill. 2d 340, 449 N.E.2d 1341.

■ The employer claims that it merely "acquiesced" to the scheduling policy that allowed workers to leave early, and, therefore, the assault was not work related. However, the employer created the policy, and it was this scheduling policy which was the cause of Schladt's assault on the claimant. The supervisor changed the claimant's schedule and instructed him to go on the garbage route with Schladt. Schladt wanted to start work at 6:30 a.m. so he could finish early and go to his second job. Shortly after starting their route, Schladt assaulted the claimant because the claimant did not arrive at 6:30 a.m., although he was not scheduled until 7 a.m. Given the foregoing facts and inferences, it cannot be said that the Commission's decision was against the manifest weight of the evidence.

The village contends that the circuit court's decision is based on facts and inferences not found by the Commission. It takes exception to the circuit court's finding that the fight involved "work activities." While the Commission does not use this specific language, it stated that the village "created the situation which gave rise to the assault by allowing the employees to start work early so they could leave early." These two findings are reasonably analogous.

The village also takes exception to the circuit court's finding that Schladt had an "ongoing behavioral problem," while the Commission found that Schladt had an "ongoing pattern of aggressive behavior." Again, although the two findings are worded differently,

the results are analogous. As such, the circuit court's findings are consistent with those of the Commission.

■■ The village next argues that the Commission erred in its calculation of the claimant's average weekly wage. The claimant made $28,126.80 in the prior year working for the village, a stipulated average of $540.90 per week. He also made $1,662.64 in nine weeks working for a second employer, Lois Limo.

The Commission calculated claimant's average weekly wage by adding the average weekly pay of 52 weeks from the village to the average weekly pay earned by the claimant from Lois Limo. In other words, the Commission added the $540.90 to Lois Limo's average of $184.74 to arrive at an average weekly salary of $725.64.

The employer argues that the correct calculation should have been to add the $1,662.64 total made at Lois Limo to the $28,126.80 total made the previous year from the employer, and then divide that total of $29,789.44 by 52 weeks for an average weekly salary of $572.87. Both parties concede there is no case law on point. The statutory basis for computing average weekly pay is as follows:

> "Where the employment prior to the injury extended over a period of less than 52 weeks, the method of dividing the earnings during that period by the number of weeks and parts thereof during which the employee actually earned wages shall be followed. *** When the employee is working concurrently with two or more employers and the respondent employer has knowledge of such employment prior to the injury, his wages from all such employers shall be considered as if earned from the employer liable for compensation." (Ill. Rev. Stat. 1991, ch. 48, par. 138.10.)

Based on the language of the statute, we find the Commission was correct in its calculation. In cases of concurrent employment, "wages *** shall be considered as if earned from the employer liable for compensation." To calculate the employer's wages for a period of less than 52 weeks "earnings during that period" must be divided by the "number of weeks *** during which the employee actually earned wages." Ill. Rev. Stat. 1991, ch. 48, par. 138.10.

We note that the statutory computation is somewhat ambiguous. It could be construed that "wages from all such employers shall be considered as if earned from the employer liable for compensation" means simply to add the total of the two wages together and then divide by 52 weeks to arrive at the weekly average. However, such a calculation in the instant case would lead to a second job average

of only $31.97. We believe this figure does not fairly represent the claimant's earning power at the time of his injury.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

McCULLOUGH, P.J., and RAKOWSKI, WOODWARD, and RARICK, JJ., concur.